*Formatted for Electronic Distribution*                                                                                                              *Not for Publication*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF VERMONT

Filed & Entered
On Docket
August 12, 2019

| | |
|---|---|
| In re:<br>    Nicholas and Amanda Gravel,<br>        Debtors. | Chapter 13 Case<br># 11-10112 |
| In re:<br>    Allen and Laurie Beaulieu,<br>        Debtors. | Chapter 13 Case<br># 11-10281 |
| In re:<br>    Matthew and Emilie Knisley,<br>        Debtors. | Chapter 13 Case<br># 12-10512 |

*Appearances:*  Mahesha Subbaraman, Esq.                Alexandra Edelman, Esq.
                Subbaraman PLLC                          Primmer Piper Eggleston & Cramer, PC
                Minneapolis, Minnesota                   Burlington, Vermont
                *For the Trustee*                        *For the Creditor*

## MEMORANDUM OF DECISION
### CERTIFYING DECISION FOR DIRECT APPEAL UNDER 28 U.S.C. § 158(d)(2)

The chapter 13 trustee has filed a motion, pursuant to 28 U.S.C. § 158(d)(2)(A), asking the Court to certify its recently issued Decision on Remand, imposing sanctions on mortgage servicer PHH Mortgage Corporation (doc. # 150), for direct appeal to the U.S. Court of Appeals for the Second Circuit. The movant argues this Decision satisfies the criteria for direct appeal because it involves a question of law (i) for which there is no controlling Second Circuit decision, (ii) that is of public importance, and (iii) that is currently the subject of conflicting decisions. The chapter 13 trustee further argues that an immediate, direct appeal would materially advance the progress of the instant litigation. PHH Mortgage Corporation opposes the trustee's motion and argues the trustee has failed to demonstrate the Decision on Remand meets the statutory criteria for direct appeal. For the reasons discussed below, the Court finds its Decision on Remand meets at least two of the three criteria set forth in 28 U.S.C. § 158(d)(2)(A) and, accordingly, it is statutorily bound under 28 U.S.C. § 158(d)(2)(B) to certify the issue for direct appeal to the Second Circuit.

1

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the factual underpinnings, and lengthy procedural history, of the instant litigation concerning the propriety of sanctions imposed on a mortgage servicer for its violation of a Bankruptcy Rule and Bankruptcy Court orders. It sets forth only the background essential to the instant motion. On September 12, 2016, this Court entered a memorandum of decision and order (doc. ## 82, 83,[1] the "Sanctions Decision") granting the chapter 13 trustee's motion for sanctions (doc. # 75), and awarding sanctions against PHH Mortgage Corp. ("PHH"), in the amounts of $225,000, $125,000 and $25,000, respectively, in these three cases. PHH appealed that Decision to the District Court. On December 18, 2017, the U.S. District Court (Crawford, J.) entered a final order, reversing and remanding these three matters[2] to this Court (doc. # 104, the "USDC Remand"). The chapter 13 trustee (the "Trustee") filed a timely notice of appeal with the Second Circuit Court of Appeals. The Court of Appeals granted PHH's motion to dismiss that appeal due to a lack of appellate jurisdiction, finding the USDC Remand "contemplat[es] significant further proceedings." See doc. # 109, citing In re Penn Traffic Co., 466 F.3d 75, 78 (2d Cir. 2006). On June 27, 2019, this Court entered a memorandum of decision and order (doc. ## 134, 135, the "USBC Decision on Remand") imposing reduced sanctions on PHH, based on the instructions set out in the USDC Remand (doc. # 104), and modifying the payee of the sanctions: It directed PHH to pay to the Trustee the portion of the sanctions award stemming from PHH's violations of Bankruptcy Rule 3002.1, and directed PHH to pay the remaining sanctions, i.e., those arising from PHH's violations of Debtor Current Orders, to Legal Services Vermont, a pro bono legal service provider (doc. # 135). On July 5, 2019, PHH filed an emergency motion for a stay pending appeal; this Court granted the stay, on condition that PHH post a bond (doc. ## 139, 143). Thereafter, PHH filed notices of appeal and the required bond (doc. ## 142,147). On July 25, 2019, PHH filed a statement of issues on appeal and a designation of contents for inclusion in record on appeal (doc. ## 151, 152).

Presently before the Court are the Trustee's motion to certify a direct appeal of the USBC Decision on Remand to the Second Circuit Court of Appeals, pursuant to 28 U.S.C. § 158(d)(2) (doc. # 150, the "Motion"), PHH's response (doc. # 156, the "Response"), and the Trustee's reply (doc. # 157, the "Reply"). All of these documents were timely filed.

---

[1] All document docket numbers refer to the numbers assigned to them on the docket in the case of Nicholas and Amanda Gravel (#11-10112), unless otherwise indicated; all such documents are docketed in all three of the above-captioned cases.
[2] For administrative convenience, the Trustee's motions, filed in three cases, were administratively consolidated (Gravel, doc. # 150; Beaulieu, doc. # 169; Knisley, doc. # 134).

**DISCUSSION**

In his Motion, the Trustee asks the Court to certify a direct appeal to the Second Circuit Court of Appeals to consider three questions of law:

1. Whether bankruptcy courts may impose punitive non-contempt sanctions under Bankruptcy Rule 3002.1(i)(2), which authorizes bankruptcy courts to "award … other appropriate relief" for Rule 3002.1 violations;

2. Whether bankruptcy courts may impose punitive non-contempt sanctions under § 105(a), which authorizes bankruptcy courts to "issue any order … that is necessary or appropriate to carry out" the Bankruptcy Code; and

3. Whether bankruptcy courts may impose punitive non-contempt sanctions commensurate (in amount) to the violation at hand.

Doc. # 150, p. 6.

Section 1233 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) amended 28 U.S.C. § 158(d)(2) to permit direct appeal of a bankruptcy court order or judgment to the appropriate court of appeals if the bankruptcy court certifies that either "(i) the judgment, order, or decree involves a question of law as to which there is no controlling decision … or involves a matter of public importance; (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case." Weber v. United States Tr., 484 F.3d 154, 157 (2d Cir. 2007) (quoting 28 U.S.C. § 158(d)(2)(A)(i)-(iii)). "Notably, this certification is not discretionary" and a bankruptcy court should certify the appeal if it concludes that any of the listed criteria are met. GE Capital Corp. v. Mukamal, 2017 U.S. Dist. LEXIS 186511, at *5 (S.D. Fla. 2017); In re General Motors Corp., 409 B.R. 24, 27 (Bankr. S.D.N.Y. 2009). See 28 U.S.C. § 158(d)(2)(B) ("If the bankruptcy court … on its own motion or on the request of a party, determines that a circumstance specified in clause (i), (ii), or (iii) of subparagraph (A) exists … then the bankruptcy court … shall make the certification described in subparagraph (A).") (emphasis added). Thus, the statute requires this Court to determine whether the USBC Decision on Remand satisfies any of these three criteria,[3] and is eligible for direct appeal.

In its Response, PHH alleges the Motion has fatal procedural deficiencies (doc. # 156). Since this line of argument could be dispositive, the Court will address whether the Motion satisfies the statute's procedural mandates before it considers the merits of the Motion, i.e., whether the USBC Decision on Remand meets the criteria listed by 28 U.S.C. § 158(d)(2).

---

[3] The first element of 28 U.S.C. § 158(d)(2)(A), is written in the disjunctive, conferring jurisdiction on direct appeal thereunder if clause (i), (ii) or (iii) is met; the conjunctive provision is between the first and second element, and if any those clauses is established, this Court must certify the USBC Decision on Remand for direct appeal, pursuant to 28 U.S.C. § 158(d)(2)(B).

3

A. <u>Procedural Requirements of Bankruptcy Rule 8006 and 28 U.S.C. § 158(d)(2)</u>

Federal Bankruptcy Rule 8006 establishes the procedure for certification of a direct appeal under 28 U.S.C. § 158(d)(2). Critical among the procedural requirements is <u>when</u> the request for certification must be filed. The Rule instructs it "must be filed with the clerk of the court where the matter is pending within 60 days after the entry of the judgment, order, or decree." Fed. R. Bankr. P. 8006(f)(1). <u>See also</u> 28 U.S.C. § 158(d)(2)(E). This Court issued its Decision on Remand on June 27, 2019, and the Trustee filed his Motion on July 24, 2019. Since the Motion was filed less than 60 days after issuance of the subject Decision, it was timely under Rule 8006. The second procedural mandate concerns <u>where</u> the request for certification must be filed. The Rule requires it must be filed in the court, "where the matter is pending" and specifies that "a matter remains pending in the bankruptcy court for 30 days after … the first notice of appeal from the judgment, order, or decree for which direct review is sought." Fed. R. Bankr. P. 8006(b).[4] Under the latter phrase, this litigation remains pending in this Court until August 12, 2019, and therefore the Motion is filed in the proper court. Consequently, the Court finds the Motion satisfies the filing requirements of Rule 8006(b).

The focal point of PHH's Response, and its primary argument that certification is not warranted under the criteria of 28 U.S.C. § 158(d)(2)(A), is that the Trustee has mischaracterized the questions of law at issue in the parties' appeal. PHH asserts the USBC Decision on Remand imposed punitive <u>contempt</u> sanctions, rather than the punitive <u>non-contempt</u> sanctions, as the Trustee describes them in his Motion, and that this mischaracterization "dooms the Trustee's certification request" (doc. # 156, pp. 3-7). This argument is unavailing for two reasons.

First, while "the consequences of an adjudication of criminal contempt are different from those flowing from the imposition of sanctions," a party facing substantial punitive sanctions is entitled to the same due process protections as a party threatened with criminal contempt. <u>Mackler Prods., Inc. v. Cohen</u>, 146 F.3d 126, 129–30 (2d Cir. 1998). <u>See also</u> <u>Satcorp Int'l Group v. China Nat'l Silk Import & Export Corp.</u>, 101 F.3d 3, 5 (2d Cir. 1996). Regardless of whether the punitive sanctions imposed in these cases are more accurately described as contempt or non-contempt, the level of due process required is equivalent; the critical distinction is that heightened criminal due process protections are required if the punitive sanction is "substantial." <u>Mackler</u>, 146 F.3d at 130. As explained in the USBC Decision on Remand (doc. # 134), the characterization of the punitive sanction as "contempt" or "non-contempt" is of

---

[4] Bankruptcy Rule 8006(b) reads, in full, as follows:

<u>Filing the Certification.</u> The certification must be filed with the clerk of the court where the matter is pending. For purposes of this rule, a matter remains pending in the bankruptcy court for 30 days after the effective date Under Rule 8002 of the first notice of appeal from the judgment, order, or decree for which direct review is sought. A matter is pending in the district court or BAP thereafter.

4

minimal importance when weighed against larger questions such as whether a bankruptcy court has authority to impose such punitive sanctions and, if so, what constitutes a "substantial" sanction warranting heightened criminal procedure protections.

Second, the precise wording of the legal questions in a direct certification request is not the legal talisman PHH portrays it to be. As the Trustee described in his Reply, the articulation of questions for review "makes life easier for the certifying court in deciding whether an order meets § 158(d)(2)'s standards for certification" (doc. # 157). PHH correctly acknowledged this in its Response, pointing out that if this Court certifies a direct appeal, "the entire judgment, order or decree proceeds to the court of appeals, not only the questions worthy of certification" (doc. # 156). See Marshall v. Blake, 885 F.3d 1065, 1072 n. 6 (7th Cir. 2018) (finding the direct certification under § 158 "gives [that court] jurisdiction over 'final judgments, orders, and decrees,' not just the narrow legal issue certified.") PHH has not cited, and this Court has not found, any decision in which a court denied direct certification based solely on the wording of the legal questions raised. On the contrary, courts have adjusted the language as needed where they found certification proper. For example, in Millennium Lab Holdings, the Delaware Bankruptcy Court considered six legal issues and granted certification on one of the issues, despite the imprecise wording of the requesting party. In re Millennium Lab Holdings II, LLC, 543 B.R. 703, 711 (Bankr. D. Del. 2016) (finding that "Issue 2 states an issue of law, particularly if one ignores the reference to 'fraud and willful misconduct.'"). The Court thus rejects PHH's opposition to the certification request to the extent it is based on the Trustee's wording of the questions for review in his Motion.

PHH's next, fundamentally procedural, argument is that the 2016 Sanctions Order is a "related opinion or memorandum" which must be filed with a certification request pursuant to Rule 8006(f)(2)(E), and the Trustee's failure to do so is fatal to the Motion. This objection is not persuasive on several grounds: (1) the Trustee did attach a copy of the USBC Decision on Remand to his Motion (doc. # 150), (2) PHH cites no caselaw for its proposition that failing to attach the underlying Sanctions Order is a critical deficiency, and (3) the most pertinent case on this question solidly holds to the contrary. In Jaffe, the court considered a direct certification request in a similar procedural posture, i.e., a bankruptcy court order was vacated by the district court, the bankruptcy court entered a new final order, and the appellant then requested certification of a direct appeal. Jaffe v. Samsung Elecs. Co. (In re Qimonda AG), 470 B.R. 374, 387 (E.D. Va. 2012). As the Trustee did here, the requesting party in Jaffe attached only the decision and order on remand. Jaffe v. Samsung Elecs. Co. (In re Qimonda AG), no. 1:12-cv-0008 (Jan. 12, 2012) (doc. # 5). In its order certifying the movant had established the criteria for a direct appeal, the district court did not comment upon this omission, undercutting PHH's argument that this omission constitutes a fatal deficiency under Rule 8006. There is at least one bankruptcy court that held even when a movant

5

fails to attach a copy of <u>any</u> judgment or order, that it still insufficient to warrant denial of certification. See <u>In re Bailey</u>, 2018 Bankr. LEXIS 465, at \*\*2–3 (Bankr. D. Me. 2018). Thus, this argument also fails.

The final procedural argument PHH raises is that the Trustee lacks standing to request certification because he "would not benefit from a favorable ruling on the issue he presents" (doc. # 156, p. 14). This argument is without merit. As the Trustee points out, an affirmance of the USBC Decision on Remand on direct appeal would dissolve the stay pending appeal, thereby compelling PHH to pay to the Trustee the sanctions this Court awarded to him (doc. # 157, p. 9). Additionally, PHH cites no caselaw to support its position that the Trustee lacks standing because this Court "re-impos[ed] the exact same sanctions" with regard to the Rule 3002.1 sanctions and its premise is flawed. In the USBC Decision on Remand, the Court modified the sanctions imposed on PHH for its Rule 3002.1 violations by shifting the recipient of those sanctions to be the Trustee, rather than Legal Services Vermont. Moreover, even if the controlling aspect of the Rule 3002.1 sanctions is the amount, and the amount has not changed, the USBC Decision on Remand is, nonetheless, "a separate final order that may be directly appealed" to the Second Circuit if it meets the statutory requirements of 28 U.S.C. § 158(d)(2). <u>Jaffe v. Samsung Elecs. Co. (In re Qimonda AG)</u>, 470 B.R. 374, 389 n. 23 (E.D. Va. 2012). "This is because the district court's remand order vacated the prior final order of the bankruptcy court, and now the bankruptcy court has issued a new final order, which may be certified for direct appeal." <u>Id.</u> The Trustee thus has standing to request direct certification.

Having addressed the crux of PHH's objection, focused on alleged procedural deficiencies in the Trustee's Motion, the Court now turns to whether the USBC Decision on Remand satisfies any of the three criteria, listed in 28 U.S.C. § 158(d)(2)(A), that would require certification for direct review. See <u>In re Millennium Lab Holdings II, LLC</u>, 543 B.R. 703, 708 (Bankr. D. Del. 2016) (finding "when a party asserts that several issues satisfy the requisites for certification, courts undertake an analysis of each criterion against each issue.").

B. CERTIFICATION CRITERIA

1. *No Controlling Law*

The first ground the Trustee posits for certification is that the USBC Decision on Remand involves questions of law "as to which there are no controlling decisions of the court of appeals for the circuit or of the Supreme Court of the United States …" 28 U.S.C. § 158(d)(2)(A)(i). Direct appeal is "most appropriate" where the court of appeals is "called upon to resolve a question of law not heavily dependent on the particular facts of a case[.]" <u>Weber v. United States Tr.</u>, 484 F.3d 154, 158 (2d Cir. 2007). "Controlling law for the purposes of section 158(d)(2)(A)(i) is that which admits of no ambiguity in resolving the issue" and "may be supplied by combining holdings from multiple cases." <u>In re Millennium Lab Holdings II, LLC</u>, 543 B.R. 703, 708 (Bankr. D. Del. 2016). The Second Circuit has indicated it "will

6

be most likely to exercise [its] discretion to permit a direct appeal where there is uncertainty in the bankruptcy courts (either due to the absence of a controlling legal decision or because conflicting decisions have created confusion) …" Weber, 484 F.3d at 161.

The sanctions at issue in the USBC Decision on Remand involve several questions of law that the Second Circuit has not definitively addressed, and which in turn has left bankruptcy courts in this circuit in a state of uncertainty as to the scope and type of punitive sanctions they may impose as an exercise of their statutory and inherent authority. In its Decision on Remand, this Court acknowledged the District Court's observation that "the question of whether Rule 3002.1(i) authorizes the imposition of punitive sanctions appears to be a question of first impression, not just in the Second Circuit, but across the nation" (doc. # 134, p. 7). Additionally, the Second Circuit has not yet squarely addressed the extent of a bankruptcy court's authority to impose punitive sanctions under either its inherent power or § 105(a) of the Bankruptcy Code. See United States v. Guariglia, 962 F.2d 160, 163 (2d Cir. 1992). If, as the District Court opined, "a more limited view of the scope of the Bankruptcy Court's power to impose punitive sanctions would prevail in the Second Circuit" (doc. # 104, p. 16), in line with the position adopted by the Sixth and Ninth Circuits, there is currently no Second Circuit caselaw describing the meaning of, or how to determine, a "serious" or "modest" punitive sanction (doc. # 134, pp. 15–18). See In re John Richards Homes Bldg. Co., 552 F. App'x 401, 415–16 (6th Cir. 2013); Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1193 (9th Cir. 2003).

In the USBC Decision on Remand, this Court articulated its understanding of how the Second Circuit views a "modest" sanction when imposed on a corporation, by piecing together and comparing Second Circuit decisions that collectively touch on the issue. Nevertheless, the essential questions underlying that decision, i.e., this Court's statutory and inherent authority to impose punitive sanctions for violations of Rule 3002.1 and court orders, and the permissible scope of those sanctions, lack definitive guidance from the Second Circuit. Echoing the Middle District of Florida Bankruptcy Court, this Court "is fully cognizant of the tremendous case load" of the Second Circuit Court of Appeals, and "does not wish to create unnecessary work[,]" while also recognizing "the issues presented in this case are ones that will recur" in the District of Vermont and other districts throughout the Second Circuit. In re Blue Stone Real Estate, Constr. & Dev. Corp., 396 B.R. 555, 560 (Bankr. M.D. Fla. 2008).

The Trustee has demonstrated certification is warranted under § 158(d)(2)(A)(i), due to the absence of controlling decisions on the legal questions raised.

### 2. *A Matter of Public Interest*

The Trustee next argues, as an additional ground for certification of a direct appeal, that the questions of law within the USBC Decision on Remand involve "a matter of public importance," and thus

7

satisfy the alternative criterion described in 28 U.S.C. § 158(d)(2)(A)(i). "Public importance exists when the matter on appeal transcends the litigants and involves a legal question the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case." Mark IV Indus., Inc. v. N.M. Env't Dep't, 452 B.R. 385, 388 (S.D.N.Y. 2011); see also In re Millennium Lab Holdings II, LLC, 543 B.R. 703, 709 (Bankr. D. Del. 2016). "An appeal that impacts only the parties, and not the public at large, is not a matter of public importance." Mark IV Indus., 452 B.R. at 388. Accord In re Sabine Oil & Gas Corp., 551 B.R. 132, 140 (Bankr. S.D.N.Y. 2016).

Courts have struggled to define what types of legal questions satisfy the "public importance" criterion of § 158(d)(2). "Simply because a matter is important to certain members of the public does not render it a matter of 'public importance' that meets the standard for direct certification." In re Sabine Oil & Gas Corp., 551 B.R. at 142. There is "no Congressional guidance and only scant caselaw that addresses precisely what qualifies as a matter of public importance under § 158(d)(2), but there is no question it should be invoked only in narrow circumstances." Jaffe v. Samsung Elecs. Co. (In re Qimonda AG), 470 B.R. 374, 387 (E.D. Va. 2012). The leading bankruptcy treatise notes "[t]he bar for certification under this standard should be set high." 1 Collier on Bankruptcy ¶ 5.06(4)(b) (16th ed. 2019). Collier goes on to provide several examples that could satisfy the criterion:

> Such things as the constitutionality of a provision of title 11, the applicability of nonbankruptcy law to matters arising in a bankruptcy case, the ability to change the venue of a title 11 case to an improper venue or any one of the important provisions governing consumer bankruptcies come immediately to mind as matters that might be considered as being of public importance. Alternatively, a court might find a matter to be of public importance if it could impact a large number of jobs or other vital interest in a community.

Id. The Trustee argues the USBC Decision on Remand involves a matter of public importance for two reasons. He argues, first, the question of a bankruptcy court's inherent and statutory authority to impose punitive sanctions has broad ramifications for the public's interest in seeing the purposes and policies of the Bankruptcy Code are not frustrated. He also argues this question has important ramifications for a chapter 13 trustee's enforcement duty (doc. # 150, p. 10). The Court concurs with the Collier position that the bar for demonstrating a matter has public interest is a high one, and finds the Trustee's arguments clear it. The question of bankruptcy courts' inherent and statutory authority to impose punitive sanctions and, if so, in what amounts and in what contexts, extends beyond the facts of this case and the litigants. Mark IV Indus., Inc. v. N.M. Env't Dep't, 452 B.R. 385, 388 (S.D.N.Y. 2011). Second Circuit determination of the legal questions undergirding the USBC Decision on Remand would provide bankruptcy courts in this circuit with a clearer understanding of the parameters of their authority to impose punitive sanctions, as well as guidance on whether and how they should calibrate those sanctions

8

according to the financial resources of the offending party and the gravity of the offense. While the Court has already found the Trustee demonstrated a sound basis for certification of a direct appeal under the first clause of § 158(d)(2)(A), due to the absence of controlling caselaw, the "public importance" of the legal questions at issue creates an additional basis for certification under that clause.

### 3. *Conflicting Decisions*

The Trustee further argues that direct certification is required under clause (ii) of the controlling statute because the USBC Decision on Remand requires resolution of conflicting decisions across circuits. See 28 U.S.C. § 158(d)(2)(A)(ii). The Trustee asserts that, "[w]hile the Second Circuit has not specifically addressed whether a [punitive non-contempt] sanction falls within the statutory or inherent power of bankruptcy courts, a broad spectrum of views exists among the circuits on this point" (doc. # 150, p. 11). The Trustee points also to the conflicting decisions among bankruptcy courts in other circuits as to whether Rule 3002.1(i) authorizes bankruptcy courts to impose punitive sanctions for violations of that Rule (doc. # 150, p. 11).

The Trustee acknowledges in the Motion that the "conflicting decisions" to which he refers, and upon which he based this element of his argument, are not from within the Second Circuit. PHH seizes upon this and contends that only conflicting decisions within the same circuit support certification under 28 U.S.C. § 158(d)(2)(A)(ii) (doc. # 156, p. 12). The Trustee's position is that the text of the statute does not contain any such limitation and that "circuit courts have not read any within-the-same-circuit limit into § 158(d)(2)(A)(ii)" (doc. # 150, p. 12) (citing Tidewater Fin. Co. v. Kenney, 531 F.3d 312, 315 (4th Cir. 2008)). The Trustee is correct that the bankruptcy court in Kenney certified its decision for direct appeal, in part, because it involved "a question of law requiring resolution of conflicting decisions among the Bankruptcy Courts in various circuits of the United States," but the bankruptcy court also certified its decision on the additional grounds that it satisfied criteria (i) and (iii) of 28 U.S.C. § 158(d)(2)(A) In re Kenney, No. 06-71975 (Bankr. E.D. Va. June 5, 2007). The Fourth Circuit neither identified which of the three criteria it relied on in authorizing the direct appeal, nor stated whether the conflicting decisions across circuits, that the movant cited, satisfied 28 U.S.C. § 158(d)(2)(A)(ii). In re Kenney, No. 06-71975 (Bankr. E.D. Va. July 18, 2007). For that reason, this Court does not find Kenney probative here.

Most of the caselaw from courts within the Second Circuit adjudicating requests for certification of a direct appeal shows conflicting decisions from outside this circuit do not satisfy the criterion for certification under 28 U.S.C. § 158(d)(2)(A)(ii). See, e.g., Weber v. United States Tr., 484 F.3d 154, 161 (2d Cir. 2007) (finding it does not "perceive a conflict of such a nature that creates uncertainty in the bankruptcy courts, as all three of the courts within this circuit to have considered the question" have ruled in the same fashion) (emphasis added); In re GMC, 409 B.R. 24, 29 (Bankr. S.D.N.Y. 2009) ("There are

9

no conflicting decisions within Second Circuit for the Circuit to resolve. And the decisions from outside the Circuit are not a basis for § 158(d)(2) review."). The authors of the leading bankruptcy treatise take this position, as well. See Collier on Bankruptcy ¶ 5.06(4)(c) (16th ed. 2019) ("At what level of the court system these 'conflicting decisions' must exist is not specified, although they would have to exist within the particular circuit."). As Collier describes it, this reading of the "conflicting decisions" criterion makes intuitive sense, as "[i]t is unlikely that conflicting decisions among circuits would qualify because the decision of the circuit court in a case in a circuit that had not spoken to the issue could not resolve the conflict [and] … certification in this event would undoubtedly be sought under the 'no controlling case in the circuit' ground." Id. at ¶ 5.06(4)(c) n. 38. That is precisely the situation here. There is a circuit split on the inherent and statutory authority of bankruptcy courts to impose punitive sanctions for violations of court orders, in addition to the differing views of courts on the ability to levy punitive sanctions under Rule 3002.1(i). These conflicting decisions across circuits are germane to § 158(d)(2)(A)(i), but they are outside the scope of § 158(d)(2)(A)(ii) and do not establish a conflicting decisions basis for certification.

### 4. *Materially Advances the Progress of the Case*

The Trustee cites 28 U.S.C. § 158(d)(2)(A)(iii) as an additional basis for certification of direct review, arguing an immediate appeal may materially advance the progress of this case. In his Motion, the Trustee argues that any outcome of a direct appeal to the Second Circuit would effectively resolve this case without need for further litigation and without the additional cost and time involved with a second proceeding before the District Court (doc. # 150, pp. 12–13).

While the statute provides for "expeditious resolution of bankruptcy cases" through direct circuit court review, the Second Circuit has found this "privilege[s] speed over other goals [and] speed is not necessarily compatible with [the] ultimate objective – answering questions wisely and well." Weber v. United States Tr., 484 F.3d 154, 160 (2d Cir. 2007). Hence, arguments emphasizing that direct appeal is a faster resolution of the legal questions and simply a more efficient route to the circuit court, are not sufficient on their own to satisfy the criterion set out in 28 U.S.C. § 158(d)(2)(A)(iii). See, e.g., Official Comm. Of Unsecured Creditors v. Sabine Oil & Gas Corp. (In re Sabine Oil & Gas Corp.), 2016 U.S. Dist. LEXIS 147710, at **7–8 (S.D.N.Y. 2016) (movant's desire "to skip" district court review is not grounds for certification where Second Circuit has instructed that bankruptcy cases "should normally percolate through the District Court before proceeding to the Court of Appeals."); In re Johns-Manville Corp., 449 B.R. 34 (S.D.N.Y. 2011) (rejecting movant's argument that direct certification would be "quicker because it need only be heard by one court" as "[t]hat argument can be made in every case where there is an appeal involving a final judgment of the Bankruptcy Court."); In re Millennium Lab Holdings

10

II, LLC, 543 B.R. 703, 716–17 (Bankr. D. Del. 2016) (finding "even near certainty that this appeal will ultimately end up before the [Court of Appeals] is not a basis on which to certify the order.").

The Second Circuit has addressed the benefits to be gained by adhering to the normal two-step appellate process for bankruptcy appeals:

> In many cases involving unsettled areas of bankruptcy law, review by the district court would be most helpful. Courts of appeals benefit immensely from reviewing the efforts of the district court to resolve such questions … We believe that Congress was aware of the dangers of leapfrogging the district court in the appeals process. Initially divided over whether to make direct appeals mandatory in certain circumstances, or to grant distraction to the courts of appeals to accept or decline such appeals, Congress wisely adopted the latter path, probably in recognition of the salutary effects of allowing some cases to percolate through the normal channels.

Weber v. United States Tr., 484 F.3d 154, 160 (2d Cir. 2007). To that end, the Second Circuit stated, "we will be reluctant to accept cases for direct appeal when we think that percolation through the district court would cast more light on the issue and facilitate a wise and well-informed decision." Id. at 161. Here, as was the case in Jaffe, "a direct appeal would not privilege speed over other goals, as this matter has already 'percolated' in the district court." Jaffe v. Samsung Elecs. Co. (In re Qimonda AG), 470 B.R. 374, 389 (E.D. Va. 2012) (citing Weber, 484 F.3d at 160–61)). The Jaffe court considered a request for direct certification in a case with a procedural posture analogous to that of this case (as described above), and determined certification was appropriate.

> On the first appeal, the district court set forth the appropriate standards and proper means by which to evaluate this matter. To the extent that those standards will be at issue on appeal – and it is clear that they will be – the district court has already had its say. On remand, the bankruptcy court complied with the mandate of the district court by conducting extensive fact-finding and applying the law as directed. While the parties now seek review of both the standards and their application, there is no reason for the district court to revisit its own standards, and the district court is no better equipped than the Fourth Circuit to evaluate their application […] In sum, a direct appeal in this instance serves the two purposes of § 158(d)(2), and its advantages far outweigh the benefits of having the district court address, yet again, a matter that has already been here before.

Id. at 390. Here too, the District Court remanded the Sanctions Order and this Court implemented that court's mandate on remand (by imposing reduced sanctions on PHH). As the case has already thoroughly "percolated" in the District Court, and the District Court has set forth its opinion on the legal questions at issue, the Trustee has demonstrated it would be more advantageous, and materially advance this litigation, for the Second Circuit to immediately review the legal questions raised in the USBC Decision on Remand. This satisfies the criterion in 28 U.S.C. § 158(d)(2)(A)(iii).

11

## CONCLUSION

After considering the Trustee's arguments in favor of certification, and PHH's arguments in opposition to certification, the Court finds the Trustee has established all required criteria for certification. For the reasons discussed above, the Court certifies that its Decision on Remand involves questions of law (1) as to which there is no controlling decision of the Court of Appeals for the Second Circuit and (2) a matter of public importance, and therefore, it satisfies both of the eligibility criteria required by 28 U.S.C. § 158(d)(2)(A)(i). The Court also finds an immediate appeal of the USBC Decision on Remand would materially advance the progress of these cases, and would be consistent with Second Circuit guidance on this issue, thus satisfying 28 U.S.C. § 158(d)(2)(A)(iii). Since the Trustee needed to establish only one of these criteria, certification is both proper and required by 28 U.S.C. § 158(d)(2)(B). These matters now proceed to the Second Circuit Court of Appeals, for it to determine if it will authorize a direct appeal.

This memorandum constitutes the Court's findings of fact and conclusions of law, granting the Trustee's Motion for certification of this matter for direct review by the Second Circuit Court of Appeals, pursuant to Federal Rule of Bankruptcy Procedure 8006 and 28 U.S.C. § 158(d)(2).

August 12, 2019  
Burlington, Vermont

_____  
Colleen A. Brown  
United States Bankruptcy Judge